## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
|                                          :
ALEX RODRIGUEZ,                            :    Hon. Faith S. Hochberg, U.S.D.J.
|                                          :
|                    Plaintiff,            :    Civil No. 12-3916 (FSH) (MAH)
|                                          :
|            v.                            :    **OPINION**
|                                          :
AUTO ZONE,                                 :    Date: January 14, 2014
|                                          :
|                    Defendant.            :
_____ :

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant AutoZone's ("AutoZone" or "Defendant") motion for summary judgment (Dkt. No. 38) and Plaintiff Alex Rodriguez's cross motion for spoliation (Dkt. No. 42).[1]  Plaintiff contends that he was discriminated against on the basis of his national origin in violation of Title VII, was subject to a hostile work environment in violation of Title VII, was subject to retaliation in violation of Title VII, and that Defendant's conduct also violated the New Jersey Law Against Discrimination.  Plaintiff also contends that Defendant has destroyed documents such that an adverse inference is merited.  The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Federal Rule of Civil Procedure 78.

---

[1] The Court also considered Plaintiff's sur-reply.  (Dkt. No. 48.)

## I.    BACKGROUND[2]

On April 28, 2010, Plaintiff applied to work at AutoZone as a full-time parts sales manager ("PSM").  (DS ¶ 1; PR ¶ 1.)  Following his application, Plaintiff was hired as a PSM for Store 1673.  (DS ¶ 3; PR ¶ 3.)  Plaintiff was terminated on March 15, 2011.  (PS ¶ 75; DR ¶ 75.)  On June 26, 2012, Plaintiff filed suit against AutoZone alleging he was discriminated and retaliated against by his supervisors.  (Dkt. No. 1, Complaint.)  Plaintiff was born in New York and is of Cuban descent.  (DS ¶ 2; PR ¶ 2.)

### A.  Plaintiff's History with AutoZone

Edinson Manjarres was the district manager for Store 1673.[3]  (DS ¶ 4; PR ¶ 4.)  Plaintiff did not have any problems with Mr. Manjarres while at Store 1673.  (DS ¶ 6; PR ¶ 6.)  Soon after being hired, Mr. Manjarres recommended that Plaintiff be promoted to store manager.  (DS ¶ 17; PR ¶ 17.)  Plaintiff was pleased about the promotion as it came with a substantial pay increase, and he understood that Mr. Manjarres was instrumental in securing the pay increase for him.  (*Id.*)  Plaintiff moved to Store 1674 as a store manager.  (DS ¶ 18; PR ¶ 18.)  Store 1674 had more problems and higher "shrink"[4] than Store 1673.  (*Id.*)  While Plaintiff wanted to stay at Store 1673, he agreed to move to Store 1674 when he was offered more money.  (*Id.*)

Store 1674 continued to be a high shrink and high risk store throughout the time Plaintiff managed it.  (DS ¶ 19; PR ¶ 19.)  Plaintiff knew that AutoZone took shrink very seriously and

---

[2] Unless otherwise noted, these facts come from the parties' statements of undisputed facts.  DS refers to Defendant's statement of undisputed facts, PR refers to Plaintiff's response to Defendant's statement of undisputed facts, PS refers to Plaintiff's statement of undisputed facts, and DR refers to Defendant's response to Plaintiff's statement of undisputed facts.

[3] Defendant also notes that Plaintiff was aware that Mr. Manjarres was from Colombia.  (DS ¶ 7; PR ¶ 7.)

[4] "Shrink" refers to inventory shrinkage.  This is the loss of products between the point of manufacture or purchase from supplier and the point of sale.  Shrink may consist of things like product damage, theft, or administrative errors.

that part of his job was to prevent and detect shrink (as well as keeping shrink as low as possible).  (DS ¶ 20; PR ¶ 20.)

### B.  Plaintiff's Allegations of Discrimination

Plaintiff alleges that Mr. Manjarres first called him "Castro" in October of 2010.  (DS ¶ 21; PR ¶ 21.)   From October 2010 until Plaintiff's termination, Mr. Manjarres called him "Castro" or "Cuba" on several occasions—possibly over 10 times.  (DS ¶ 22; PR ¶ 22.)  Plaintiff also alleges that Mr. Manjarres said that he was going to "deport" Plaintiff three or four times.  (DS ¶ 23; PR ¶ 23.)   Plaintiff understood that Mr. Manjarres did not have the authority to actually deport him.  (*Id.*)  Plaintiff also alleges that another employee heard Mr. Manjarres refer to Cubans as "no good stealers" who are "only good for talking shit."  (PS ¶ 20.)  Plaintiff also alleges that another employee saw that the name "Castro" had been written beneath Plaintiff's name on a whiteboard at the store and remained up for "quite some time."  (PS ¶ 19.)  During this time period, Mr. Manjarres was visiting Store 1674 approximately once every two weeks, and Plaintiff asserts that these comments occurred in nearly half of his interactions with Mr. Manjarres.  Pl.'s Br. at 1; (PS ¶ 17; DR ¶ 17).

### C.  Plaintiff's Allegations of Retaliation[5]

In 2001, William Smith was a regional manager for AutoZone, and his territory included Store 1674.  (DS ¶ 5; PR ¶ 5.)  As regional manager, Mr. Smith was responsible for overseeing the operation of the region (between 90 and 110 stores), including sales and profits, inventory, personnel training, development, and implementation of AutoZone's company objectives.  (*Id.*)  He was also in charge of deciding whether to fire employees.  (*Id.*)

---

[5] The Court notes that both parties' statements of facts and responses are lacking.  In some cases, Plaintiff included legal arguments rather than facts in his statements of fact, and in some cases, Defendant failed to properly support its denials with relevant citations to the record.

On January 11, 2011, Doug Haley, a loss prevention manager, visited Store 1674 to conduct a loss prevention audit because Store 1674 suffered from high shrink.  (DS ¶ 26; PR ¶ 26.)  Plaintiff was concerned about the high shrink results and the loss prevention audit.  (*Id*.)  Plaintiff failed this audit, which he admits went poorly, and received a "corrective action review" form as a written warning for his failure to follow instructions and unsatisfactory job performance.  (DS ¶ 27; PR ¶ 27.)  Plaintiff scored a 42 percent on the audit; any score below 85 percent is considered failing.  (DS ¶ 28; PR ¶ 28.)

Mr. Haley also interviewed Plaintiff during the audit.  (DS ¶ 29; PR ¶ 29.)  During this interview, Plaintiff admitted that the store's "shrink" was high both before and after he took over as store manager.  (DS ¶ 30; PR ¶ 30.)  During the interview, Plaintiff admitted the following:

> Q.  Have you ever taken managers dispose of merchandise[6] from AutoZone Store 1674 Hackensack NJ for your own use?
>
> A.  Yes.
>
> Q.  What items have you taken that where [*sic*] manager dispose of merchandise?
>
> A.  A set of fog lights – couple sockets – a tire spry that was broken.
>
> Q.  Did you have permission to take these items?
>
> A.  No.
>
> [. . .]
>
> Q.  Do you realize what you did is against company policy?
>
> A.  Yes.

(DS ¶ 31; PR ¶ 31.)  Plaintiff contends that he first learned that he needed permission to take "manager dispose of" merchandise during the January 11, 2011 interview.  (PR ¶ 31.)  Plaintiff

---

[6] "Manager dispose of" merchandise is damaged merchandise that has been returned by a customer to AutoZone.  (DS ¶ 32; PR ¶32.)

argues that a prior manager informed him these items were destined for the trash. (*Id.*) The parties dispute whether or not this merchandise is always thrown away. (DS ¶ 34; PR ¶ 34.) Plaintiff understood that failure to follow AutoZone's policies or removing items from the store without payment could result in termination. (DS ¶ 35; PR ¶ 35.)[7] Between January 25, 2011 and January 27, 2011, five AutoZone employees provided written statements alleging that Plaintiff would take energy drinks from the store without paying for them. (DS ¶¶ 38-42.) Plaintiff denies that he ever took these drinks without payment. (PR ¶¶ 38-42.) Several other AutoZone employees of varying races and nationalities have been terminated for removing merchandise from the store without authorization. (DS ¶¶ 68-70; PR ¶¶ 68-70.) Mr. Smith made the decision to discharge these former AutoZone employees. (DS ¶ 71; PR ¶ 71.)

On January 12, 2011 at 4:30 P.M., one day after the loss prevention audit, Plaintiff called Richard Greaves, a regional human resources manager and requested Marie Saball's phone number. (DS ¶¶ 16, 37; PR ¶¶ 16, 37.) Ms. Saball was the divisional human resources manager for AutoZone at the time. (DS ¶ 15; PR ¶ 15.) On the same day, Mr. Greaves sent Ms. Saball an email stating that Plaintiff "wanted to talk about something in his district, and wanted to discuss with someone else." (PS ¶ 33; DR ¶ 33.) Plaintiff attempted to contact Ms. Saball over the next few weeks. (PS ¶¶ 36-38.)[8] Plaintiff also alleges that his fiancée called AutoZone and Ms. Saball to voice Plaintiff's complaints about Mr. Manjarres. (PS ¶¶ 39-41.) Plaintiff alleges that

---

[7] Plaintiff admits in part and denies in part this statement of fact. Specifically, Plaintiff does not deny the underlying testimony and reiterates that he did not know that taking "manager dispose of" merchandise out of the store could result in termination when he removed the items. (PR ¶ 35.)

[8] Defendant states that the Court should not consider Plaintiff's or Darlene Ciprian's declarations because they are undated. (PR ¶¶ 36-42.) The cases Defendant cites do not support its proposition. Moreover, the Court notes that the declarations are under the penalty of perjury even though they are undated. In any event, Plaintiff refiled these declarations with dates on November 19, 2013. (Dkt. No. 48.) The Court will consider these declarations.

he eventually spoke with Ms. Saball on February 15, 2011.  (PS ¶ 53.)  Plaintiff contends that Ms. Saball destroyed her notes recording the circumstances and timing of Plaintiff's complaints. (PS ¶¶ 54-56.)  Defendant argues that there was nothing nefarious about Ms. Saball's practice of discarding her notes and that any information in her notes would have been captured by the statements and documentation retained by the regional office.  (DR ¶¶ 54-56.)

Also on February 15, 2011, Ms. Saball formally made the recommendation to terminate Plaintiff.  (DS ¶ 44; PR ¶ 44.)  The same email listed three other employees who were terminated on February 1, 2011.  (PS ¶ 44.)  The parties dispute whether or not Plaintiff and his fiancée alerted Ms. Saball to his complaints of discrimination before or after Ms. Saball's email recommending termination.  (*E.g.*, PS ¶ 40; DR ¶ 40.)  Defendant alleges that Ms. Saball recommended termination based on the results of the loss prevention audit as well as the statements from other AutoZone employees regarding Plaintiff's alleged theft of energy drinks. (DS ¶ 44.)  On the other hand, Plaintiff alleges that Ms. Saball recommended termination due to his complaints of discrimination and harassment regarding Mr. Manjarres.  (PR ¶ 44.)  But Plaintiff did testify that Ms. Saball's "acts and conduct" during their interactions never caused him to believe that she wanted to discriminate or retaliate against him.  (DS ¶ 47; PR ¶ 47.)  It is undisputed that Mr. Smith and Ms. Saball agreed that Plaintiff should be terminated, but placed that termination on hold to investigate Plaintiff's concern that he was being "set up" by Mr. Manjarres.  (DS ¶ 48; PR ¶ 48.)

On February 17, 2011, Mr. Greaves started an investigation into Plaintiff's complaints by interviewing Plaintiff, as well as other witnesses.  (DS ¶¶ 49-50; PR ¶¶ 49-50.)  On February 28, 2011, Plaintiff was suspended without pay pending the outcome of the investigation.  (DS ¶ 52; PR ¶ 52.)  On March 3, 2011, Plaintiff informed Ms. Saball that he intended to file a complaint

with the Equal Opportunity and Employment Commission.  (PS ¶ 73; DR ¶ 73.)  Defendant alleges that in March 2011, Ms. Saball found no merit to Plaintiff's allegations and reiterated her recommendation to terminate Plaintiff based on his violation of the "manager dispose of" merchandise policy and theft of energy drinks.  (DS ¶ 56.)  Mr. Smith agreed with Ms. Saball's recommendation and made the final decision to terminate Plaintiff.[9]  (DS ¶ 57, 60; PR ¶ 57.)  Plaintiff was terminated on March 15, 2011.  (PS ¶ 75; DR ¶ 75.)

## II.    STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).  The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S.

---

[9] Plaintiff denies that Mr. Smith was the person who decided to fire him.  (PR ¶¶ 59-61.)  But Plaintiff fails to cite to any record evidence supporting this denial.  Instead, Plaintiff cites to Plaintiff's Statement of Facts, ¶ 56, but ¶ 56 relates to Defendant's alleged policies related to the destruction of documents.  This fact is deemed admitted.  Fed. R. Civ. P. 56(c)(1); Fed. R. Civ. P. 56(e); L. Civ. R. 56.1; *see also Hyland v. Am. Gen. Life Companies, LLC*, Civ. No. 06-6155, 2008 WL 4308219, n.1 (D.N.J. Sept. 17, 2008), *aff'd sub nom. Hyland v. Am. Int'l Grp.*, 360 F. App'x 365 (3d Cir. 2010); *Gurvey v. Fixzit Nat. Install Servs., Inc.*, Civ. No. 06-1779, 2011 WL 1098994, *3 (D.N.J. Mar. 21, 2011) ("Absent evidence, a fact is not disputed simply because Plaintiffs deny it in their papers.").  In any event, Plaintiff previously admitted Mr. Smith was responsible for firings.  (DS ¶ 5; PR ¶ 5.)

at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

## III.    DISCUSSION

### A.  Plaintiff's Title VII Retaliation Claim

Defendant moves for summary judgment with respect to Plaintiff's Title VII retaliation claim.  Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.

In a Title VII retaliation case, a plaintiff can show retaliation through either direct or circumstantial evidence.  *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005).  When a plaintiff presents circumstantial evidence, as opposed to direct evidence, in support of his or her claim, "the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)" governs.  *White v. Planned Security Services*, 480 F. App'x 115, 118 (3d Cir. 2012). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case for unlawful retaliation by demonstrating that (1) he engaged in an activity protected by Title VII; (2) the defendants took an adverse employment action against him;[10] and (3) there was a causal connection between his participation in the protected activity and the adverse employment action he suffered.  *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).  If the plaintiff establishes a *prima facie* case of unlawful retaliation, the burden then shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse employment action. *Moore*, 461 F.3d at 342.  Finally, if the

---

[10]  "[A] plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (internal quotation marks omitted).

defendant establishes a legitimate reason for the adverse employment action, then the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's explanation is false and that retaliation was the real reason for the adverse employment action.[11] *Id.*; *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (explaining that plaintiff must show that "retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process." (internal quotations omitted)).

AutoZone argues that it had a legitimate non-retaliatory reason for terminating Plaintiff, to wit, his unauthorized removal of "manager dispose of" merchandise and employee reports of his drinking of beverages without paying for them. (Def.'s Op. Br. at 22.) Defendant has met its burden to provide a legitimate non-retaliatory reason for Plaintiff's termination.

When faced with a legitimate, non-retaliatory reason for Defendant's actions, the burden of proof rests with Plaintiff to show that the proffered reasons are pretextual. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 455 (3d Cir. 2006). Plaintiff may survive summary judgment by submitting evidence that "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination [or retaliation] was more likely

---

[11] A plaintiff may show pretext by submitting evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Under the first prong, the party must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Id.* at 1108-09. Prong two has recently been modified by the Supreme Court. Plaintiff must now show that "but for" Defendant's retaliatory bias, he would not have experienced the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *see also Coleman v. Jason Pharm.*, Civ. No. 12-11107, 2013 WL 5203559, *1 (5th Cir. Sept. 17, 2013).

than not a motivating or determinative cause of the adverse employment action."[12] *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. "[F]ederal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination or retaliation]." *Keller*, 130 F.3d at 1109 (citing *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). Plaintiff "must show, not merely that [Defendant's] proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 230 (3d Cir. 2013).

### i. Pretext: Fabrication

In this case, Plaintiff has admitted to violating company policy by removing "manager dispose of" merchandise from the store. (DS ¶ 31; PR ¶ 31.) Moreover, Plaintiff was aware that violations of company policy could result in termination. (DS ¶ 35; PR ¶ 35.) The record evidence also shows that others were fired for similar violations. (DS ¶ 68-70; PR ¶ 68-70.) Plaintiff admits that his actions—the unauthorized taking of his employer's merchandise— subjected him to possible termination. Regardless of whether he took the merchandise because of a mistaken belief it was permitted or because he was stealing, it is undisputed that Defendant had grounds to terminate Plaintiff based on company policy. *See Norman v. Kmart Corp.*, 485 F. App'x 591, 593 (3d Cir. 2012) ("[B]ecause [Plaintiff] admits to the violations she committed, she cannot show that [her employer's] reason was false."). Thus, there is no genuine dispute as

---

[12] Under *Nassar*, Plaintiff must now show that retaliation was the "but for" cause of the adverse employment action.

to whether Defendant's proffered reason for termination was a fabrication—Plaintiff admits to the alleged conduct.

ii. *Pretext: "But For" Cause*

Plaintiff makes five arguments why Defendant's proffered non-retaliatory reason for termination was a pretext: (1) unusually suggestive timing; (2) the destruction of Ms. Saball's notes; (3) the termination of other employees at Store 1674; (4) the reasons provided to Plaintiff for his termination; and (5) the reaction of his superiors to his complaints.

Plaintiff argues that, because Ms. Saball recommended that he be terminated shortly after he and his fiancée attempted to contact Ms. Saball, Defendant's reason for terminating him was pretextual.[13] Similarly, Plaintiff argues that the fact Ms. Saball destroyed her hand-written notes regarding the timing and content of Plaintiff's complaints also shows pretext.[14] But in this case, the timing of Ms. Saball's recommendation is not dispositive for summary judgment. Plaintiff only began complaining about the alleged discrimination after he admitted to removing "manager dispose of" merchandise from the store without permission and after his store failed the loss prevention audit. Even assuming Defendant was terminated shortly after complaining about alleged discrimination, it is not enough to show pretext in this case. *See, e.g.*, *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 216 (3d Cir. 2011) ("She cannot show that

---

[13] For support, Plaintiff cites to *Capilli v. Whitesell Const. Co.*, Civ. No. 04-5777, 2006 WL 1722354 (D.N.J. June 21, 2006). But *Capilli* is distinguishable on its facts. Unlike this case, *Capilli* did not involve allegations of discrimination that only occurred after an investigation by the employer. In any event, on appeal, the Third Circuit found that temporal proximity alone was not enough to demonstrate pretext and affirmed judgment as a matter of law. *Capilli v. Whitesell Const. Co.*, 271 F. App'x 261, 266 (3d Cir. 2008) ("We do not believe that the close temporal proximity between Capilli's termination and her medical leave is sufficient to draw this inference because, as outlined above, Capilli's problems interacting with her co-workers at Whitesell are amply documented in the record and began well before she experienced medical problems.")

[14] Defendant contends that any information in these notes would have been captured in the statements and documentation from AutoZone's investigation. (DR ¶ 54.)

her firing at the end of a months-long investigation into her accounting practices was the result of a complaint she made after the investigation had begun."); *Verma v. Univ. of Pennsylvania*, 533 F. App'x 115, 119 (3d Cir. 2013) ("[T]his Court has declined to infer such a causal link where an employee's negative performance evaluations predated any protected activity."); *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (noting that the timing of a negative performance evaluation was not "unusually suggestive" when the negative evaluations started prior to plaintiff's first charge of discrimination); *Choy v. Watson Wyatt & Co.*, Civ. No. 04-4097, 2006 WL 1784122, *6 (D.N.J. June 26, 2006) ("[A]ctions for retaliatory discharge will not be successful where allegations of employer misconduct are obviously raised as a 'smokescreen in challenge to the supervisor's legitimate criticism,' rather than voiced in good faith opposition to perceived employer misconduct."). In any event, Plaintiff admits to the conduct that is the reason for his termination. Since *Nassar*, a Plaintiff must show that retaliation is the "but for" cause of his termination. There is no dispute that Plaintiff's action could result in termination. (DS ¶ 35; PR ¶ 35.) Plaintiff has not met his burden to show Defendant's proffered reason for termination was a pretext or that retaliation was the but for cause of his termination. No reasonable juror could find "facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli*, 916 F.2d at 860.

Plaintiff also argues that the fact that three other employees were terminated for theft after the same loss prevention investigation shows pretext. (Pl.'s Br. at 22.) But the fact that other employees were also fired for similar offenses without asserting discrimination claims further supports Defendant's non-retaliatory reason for Plaintiff's termination. The fact that the

other employees were fired earlier and for differing theft amounts[15] does not demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Keller*, 130 F.3d at 1108-09.

Plaintiff also argues that Defendant has changed its reason for termination multiple times, demonstrating pretext. (Pl.'s Br. at 24.) But Defendant has consistently stated that Plaintiff's termination was for the unauthorized removal of merchandise. Indeed, Plaintiff admits he removed merchandise without authorization. Even if Defendant listed the incorrect stolen merchandise or date, Defendant has consistently stated that Plaintiff was terminated for theft— this "inconsistency" is not sufficient to overcome Defendant's non-retaliatory reason for Plaintiff's termination especially considering the fact Plaintiff admits to the infraction. *See Butler v. Cooper-Standard Auto., Inc.*, 498 F. App'x 549, 553 (6th Cir. 2012); *see also Clair v. Agusta Aerospace Corp.*, 592 F. Supp. 2d 812, 820-21 (E.D. Pa. 2009) ("[P]ointing to a single inconsistency does not automatically overcome a legitimate, non-discriminatory reason for termination.").

Plaintiff also complains of and distorts various comments made during depositions in this matter.[16] These comments, made long after Plaintiff's termination, do not show that the non-retaliatory reason for his termination was a pretext. Finally, Plaintiff argues that Defendant's non-retaliatory reason is a pretext because Defendant allegedly failed to levee severe punishment

---

[15] Plaintiff argues that the other terminated employees had theft amounts ranging from $10 to $1,300 while Plaintiff had an amount of "$0.00." But the value attributed to Plaintiff's admitted merchandise removal does not change the fact that it is a fireable offense.

[16] Plaintiff also complains of a comment allegedly made by Mr. Doug Haley during his termination meeting. (Pl.'s Br. at 25.) Plaintiff does not allege that Mr. Haley had anything to do with the decision to terminate him. These comments do not rebut the non-retaliatory reason for Plaintiff's termination.

on Mr. Manjarres after its investigation.  (Pl.'s Br. at 25.)  But whether or not Defendant leveed a severe enough punishment on Mr. Manjarres is not relevant to whether or not Defendant's reasons for recommending termination almost two months earlier were pretextual.

Plaintiff also fails to rebut Defendant's second proffered reason for terminating Plaintiff—his alleged theft of beverages from the store.  Whether or not Plaintiff actually stole the beverages is not important—it is only important that **_Mr. Smith believed_** that Plaintiff stole the merchandise.  *See Keller*, 130 F.3d at 1109.  Plaintiff was required to come forward with evidence showing that Mr. Smith's reason for firing Plaintiff was either a fabrication or that retaliation was the "but for" cause of his firing.[17]  *Fuentes*, 32 F.3d at 762; *Nassar*, 133 S. Ct. at 2534.  Plaintiff has done neither.

In short, Plaintiff admits that he violated AutoZone's company policy and has failed to show that this non-retaliatory reason for his termination was a pretext.  No reasonable juror could find for the Plaintiff on this claim under these circumstances.

### B.  Plaintiff's Disparate Treatment Discrimination Claim

To establish a *prima facie* case of discrimination, Plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action was under circumstances giving rise to an inference of discrimination.  *Shahin v. Delaware*, Civ. No. 13-2120, 2013 WL 3781376, *1 (3d Cir. July 22, 2013).   In order to proceed under a disparate treatment theory to establish an inference of discrimination, a plaintiff must show that his employer treated him less favorably than similarly situated employees who were not in the protected class.  *Johnson v. St. Luke's Hosp.*, 307 F. App'x 670, 672 (3d Cir. 2009) ("Johnson relies on a disparate treatment theory to

---

[17] Plaintiff asserts that Ms. Saball was the person who decided to terminate him.  Even if this is the case, the same reasoning applies to Ms. Saball's reasons for terminating Plaintiff.

establish an inference of racial discrimination.  To proceed in this fashion, Johnson must show that St. Luke's treated her less favorably than similarly situated employees who were not in her protected class.").  Like retaliation, should a plaintiff establish a *prima facie* case, the defendant may come forward with a legitimate non-discriminatory reason for its decision.  *Id*. at *2. Should this showing be made, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's explanation is false and that discrimination was the real reason for the adverse employment action.  *Id*.  In order to show pretext in the context of a discrimination claim, Plaintiff must provide "evidence, direct or circumstantial, from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [the employer's] action."  *Shahin v. Delaware*, Civ. No. 13-1955, 2013 WL 5120863, *3 (3d Cir. Sept. 16, 2013).

Because Defendant has offered a non-discriminatory reason for Plaintiff's termination, and Plaintiff failed to demonstrate that those reasons were pretextual (for the same reasons discussed above with respect to retaliation), summary judgment in favor of Defendant with respect to Plaintiff's disparate treatment discrimination claim must be granted.

Plaintiff also fails to show that the adverse action was under circumstances giving rise to an inference of discrimination.  There is no connection between Mr. Manjarres' comments and Defendant's decision to terminate Plaintiff.  Indeed, Plaintiff fails to connect Mr. Manjarres' comments with either Ms. Saball's recommendation or Mr. Smith's final decision to terminate his employment.  Defendant's motion for summary judgment with respect to Plaintiff's disparate treatment discrimination claim must be granted on this separate and independent ground.

### C. Plaintiff's Hostile Work Environment Claims

Defendant makes three arguments for why Plaintiff's hostile work environment claims fail. First, Defendant argues that the alleged conduct was not objectively or subjectively sufficiently severe or pervasive so as to alter the terms and conditions of employment and create an intimidating, hostile, or offensive working environment. Second, Defendant argues that the comments did not affect Plaintiff's work or health. Third, Defendant argues that it is entitled to the affirmative defense of reasonable care as outlined in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

#### i. Legal Standard

In order to meet his *prima facie* case for a hostile work environment claim, Plaintiff must prove: "(1) that he suffered intentional discrimination because of his race or national origin; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 286 (3d Cir. 2010). "In employing this analysis, a court must evaluate the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Id*. at 286-87. "Title VII is not violated by '[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee' or by mere 'discourtesy or rudeness,' unless so severe or pervasive as to constitute an objective change in the conditions of employment." *Id*. at 287 (citing *Faragher*, 524 U.S. at 787); *see also Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) ("[O]ffhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to

amount to a change in the terms and conditions of employment." (internal citations and quotation marks omitted)).  Title VII is only violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted).

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Faragher*, 524 U.S. at 807.  If no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages.[18]  *Id*.  The defense has two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Id*.  "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."  *Id*. at 808.

### ii. Analysis

In order to survive summary judgment, Plaintiff must show that the alleged discrimination was "severe or pervasive."  *Sanchez*, 362 F. App'x at 286.  Plaintiff complains that the remarks Mr. Manjarres made occurred about once a month, from October 2010 until March 2011.  There is no record evidence that Mr. Manjarres physically threatened Plaintiff in this handful of interactions spread over 6 months.  There is no doubt that these comments were not "pervasive."  Indeed, the vast majority of time, Mr. Manjarres was not physically present at

---

[18] The same affirmative defense is outlined in *Burlington Indus., Inc. v. Ellerth*.  *Ellerth*, 524 U.S. at 765.

Plaintiff's store.  He visited about twice a month, and the discrimination Plaintiff describes only occurred in half of those interactions.  But the Court need no reach the question of whether or not these comments were "severe" because even if they were "severe," Defendant would be entitled to the affirmative defense discussed in *Faragher* and *Ellerth*.  Even construing all facts and inferences in a light most favorable to Plaintiff, as the Court must do on a motion for summary judgment, Plaintiff waited an unreasonable amount of time before attempting to use AutoZone's anti-discrimination opportunities.

There is no dispute that AutoZone has a company policy that prohibits discrimination and requires that employees report any discrimination immediately.[19]  (DS ¶¶ 11-14; PR ¶¶ 11-14.) AutoZone makes a handbook with its policy prohibiting discrimination, harassment, and retaliation available to every employee.  (*Id.*)  Even taking Plaintiff's assertions as true, he failed to even attempt to report any alleged harassment until the day after he failed AutoZone's loss prevention audit.[20]  (PS ¶¶ 36-38.)  This suspicious timing, coupled with Plaintiff's delay of nearly four months without explanation, demonstrates that Plaintiff unreasonably failed to take advantage of Defendant's preventative measures as a matter of law.

Other courts have found this amount of time before action to be unreasonable as a matter of law.  *See*, *e.g.*, *Casiano v. AT&T Corp.*, 213 F.3d 278, 287 (5th Cir. 2000) (four month delay unreasonable); *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 458 (6th Cir. 2008) (noting that waiting to report until two months into a leave of absence was unreasonable); *Jackson v. Cnty. of*

---

[19] The alleged harassment in this case is not linked to any tangible employment action.  There is no evidence that Mr. Smith, the person responsible for Plaintiff's termination, participated in any of the alleged harassment.

[20] Plaintiff alleges that he reported the alleged harassment to Ms. Saball on February 15, 2011— over a month after the audit.  After this report, AutoZone investigated Plaintiff's complaints and issued a "Corrective Action Review Form" to Mr. Manjarres.  (PS ¶ 25; DS ¶¶ 49-50; PR ¶¶ 49-50.)

*Racine*, 474 F.3d 493, 502 (7th Cir. 2007) (finding four months unreasonable); *Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 977 (8th Cir. 2005) (finding four months unreasonable), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009) (2.5 month delay unreasonable); *Minix v. Jeld-Wen, Inc.*, 237 F. App'x 578, 586 (11th Cir. 2007) (finding that four months, six months, and a year was unreasonable); *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1291 (11th Cir. 2003) (finding 2.5 months unreasonable); *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (finding a five or six month delay unreasonable); *Adams v. City of Gretna*, 2009 WL 2883038, *7 (E.D. La. Sept. 2, 2009) (finding four months was unreasonable). The Court finds these cases persuasive and, even absent these cases, would independently conclude that Plaintiff's lack of action for four months without explanation to be unreasonable as a matter of law. There is no genuine dispute as to any material fact, and summary judgment with respect to AutoZone's affirmative defense is granted.

Plaintiff argues that Defendant is not entitled to this affirmative defense because he did in fact use AutoZone's remedial apparatus.[21] (Dkt. No. 41 at 37.) But such a rule would essentially eviscerate the affirmative defense and is contrary to the Supreme Court's holdings in *Faragher* and *Ellerth*. *Faragher* only requires that the employee ***unreasonably*** fail to take advantage of preventive or corrective opportunities. *Faragher*, 524 U.S. at 807. Under Plaintiff's view, an employee could

---

[21] For support, Plaintiff cites a special concurrence from *Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 803 (5th Cir. 1999)—a case that is not binding on this Court. But the *Indest* concurrence is not contrary to this Court's holding. Indeed, *Indest* merely concludes that the affirmative defense described in *Faragher* and *Ellerth* requires both recited prongs rather than one or the other. *Id.* at 801 (noting the defense requires that the employee fail to act promptly). *Indest* does not hold that any invocation of an anti-discrimination apparatus—including an untimely invocation—negates the affirmative defense. Moreover, the Third Circuit has affirmed the grant of summary judgment for an employer on this ground when an employee lodged an unreasonably delayed complaint. *See Newsome v. Admin. Office of the Courts of the State of New Jersey*, 51 F. App'x 76, 80-81 (3d Cir. 2002).

nullify this defense by merely complaining of alleged harassment at any time. Neither law nor logic support this interpretation of *Faragher*.

### D. Plaintiff's State Law Claims

Plaintiff's remaining New Jersey Law Against Discrimination ("NJLAD") claims are predicated on state law. Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district court may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." The Third Circuit has recognized the authority of district courts to decline to retain jurisdiction after the federal claims have been dismissed. *See*, *e.g.*, *Annulli v. Panikkar*, 200 F.3d 189, 202-03 (3d Cir. 1999) (affirming decision of the district court to decline to exercise pendent jurisdiction after granting summary judgment to the defendants on the claims arising under federal law), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *Jackson v. Fauver*, 334 F. Supp. 2d 697, 737-38 (D.N.J. 2004). The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining claims in light of the considerations of judicial economy, convenience, fairness, and comity. Plaintiff may choose to refile those claims in state court.

### E. Plaintiff's Cross Motion for Spoliation and an Adverse Inference

Plaintiff seeks an adverse inference for spoliation based on Ms. Saball's destruction of her notes that allegedly included information about the timing and content of Plaintiff's complaints of discrimination.

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

For an adverse inference to apply, "it must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (citing, *inter alia*, 29 Am. Jur. 2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.")). "[T]he key considerations in determining whether such a sanction is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 579 (3d Cir. 2007).

In this case, Plaintiff's request for an adverse inference fails for two reasons. First, the duty to preserve the evidence was not reasonably foreseeable to the party. Just because Plaintiff complained of discrimination and Ms. Saball recommended his termination based on theft and the unauthorized removal of "manager dispose of" merchandise does not mean that this litigation was "reasonably foreseeable." Not every complaint of discrimination or termination results in litigation. Second, it does not appear that there has been actual suppression or intentional withholding of evidence. Ms. Saball indicated that she destroyed the notes because their contents would have been preserved in AutoZone's investigation documents and that it was her usual practice. (DR ¶ 54.) Moreover, Plaintiff has not been prejudiced as evidence of the timing

of his calls to Ms. Saball and their content has been provided by his own testimony and telephone records.  There is no evidence that Ms. Saball intentionally destroyed her notes in order to suppress evidence.  Plaintiff's spoliation motion is denied.

## IV.    CONCLUSION & ORDER

For the reasons stated above, Defendant's motion for summary judgment is granted in part.  Plaintiff's motion for spoliation is denied, and Plaintiff's motion for a sur-reply is denied as moot.  An appropriate Order will issue.


**/s/ Faith S. Hochberg_____**
**Hon. Faith S. Hochberg, U.S.D.J.**